IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-01693-MSK-KLM

CHRISTINA ANN FOURHORN,
MUSE JAMA,
JOSE ERNESTO IBARRA,
DENNIS MICHAEL SMITH,
SAMUEL POWELL MOORE, and
DEDE DAVIS,

       Plaintiffs,

ANTONIO CARLOS SANCHEZ,

       Plaintiff-Intervenor,

v.

CITY AND COUNTY OF DENVER,
MARK DALVIT, a detective with the Denver Police Department, in his individual capacity,
CURT PETERSON, an officer with the Denver Police Department, in his individual capacity,
JOHN BISHOP, an officer with the Denver Police Department, in his individual capacity,
ALAN SIRHAL, a Denver Sheriff Department deputy, in his individual capacity,
CHOICE JOHNSON, an officer with the Denver Police Department, in his individual capacity,
ANDREW RICHMOND, an officer with the Denver Police Department, in his individual capacity,
PAUL ORTEGA, a sergeant with the Denver Sheriff Department, in his individual capacity,
JOHN DOE 1, a Denver Police Department officer, whose identity is unknown, in his individual capacity, and
JOHN DOE 2, a Denver Police Department officer, whose identity is unknown, in his individual capacity,

       Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on **Defendants' Motion to Preserve the**

**Confidential Designation for Certain Documents Pursuant to Protective Order** [Docket

No. 177; Filed May 22, 2009] and **Defendants' Second Motion to Preserve the Confidential Designation for Certain Documents Pursuant to Protective Order** (collectively the "Motions"). Prior to resolution of the Motions, the parties agreed to an extended briefing schedule. Plaintiffs and Intervenor (hereinafter "Plaintiffs") filed a combined Response in opposition to the Motions on August 17, 2009 [Docket No. 254], and Defendants filed a combined Reply on September 14, 2009 [Docket No. 240].[1] The Motions have been fully briefed and are ripe for resolution.[2]

This case involves the alleged wrongful arrests of Plaintiffs based upon mistaken identity. Plaintiffs contend that alleged "recklessly sloppy police work" led to their arrests at different times for unrelated offenses and in each case, Defendants "were aware of facts that demonstrated that they were arresting or causing the arrest of the wrong person, but they deliberately ignored those facts." *Complaint* [#221] at 5. Further, Plaintiffs contend that Defendant Denver was aware of the risks associated with mistaken identity arrests but failed to adopt policies to minimize those risks, or had policies in place which contributed to those risks. *Id.* at 63-77. Plaintiffs assert state law claims as well as federal constitutional claims pursuant to 42 U.S.C. § 1983, including that Defendant Denver's current policies, or failure to enact preventative policies, directly led to the mistaken-identity arrests and caused the deprivation of constitutional rights.

---

[1] The Response and Reply also contain argument related to Defendant Ortega's Motion to Seal Exhibits [Docket No. 186]. That motion has not been referred to me and will not be addressed herein.

[2] After the filing of the first Motion, the Court entered an Order requiring the parties to contact the Court by telephone prior to filing contested discovery motions [Docket No. 199]. That Order remains in effect for all future discovery disputes.

IT IS HEREBY **ORDERED** that the Motions [##177 and 241] are **GRANTED in part and DENIED in part** for the reasons set forth below.

According to the Reply, the issues have narrowed and the remaining dispute now relates to three categories of documents produced by Defendants under a confidentiality label pursuant to the Protective Order entered in this matter [Docket No. 34; Filed October 1, 2008].  Plaintiffs dispute that the documents should receive a confidentiality designation. The first category of documents, referred to as Category A, pertains to documents and information created by Defendant Denver's Internal Affairs Bureau ("IAB") consisting of interview recordings, transcripts and other descriptive materials relating to the arrests of Plaintiffs.[3]  *Reply* [#292] at 3-6.  The second category of documents, referred to as Category C, pertains to complaints lodged by nonparties and corresponding IAB disciplinary actions not the subject of this litigation.  Category C documents also include Denver District Attorney ("DA") materials.  *Id.* at 6-7.  The third category of documents, referred to as Category D, pertains to Denver Sheriff Department jail policies.  *Id.* at 7-8.[4]

In relation to Category A documents, Defendants argue that individuals involved in the investigation regarding Plaintiffs' mistaken-identity arrests possess a valid privacy interest pursuant to a confidentiality provision of the Denver Revised Municipal Code ("DRMC") § 42-30.  *Reply* [#292] at 3-4.  Defendants also argue that officer/witness participants in the IAB investigation are given an advisement that their comments will be

---

[3] Although Category A involves both documents and other information, for purposes of efficiency, I refer to the disputed discovery exclusively as documents.

[4] According to the Reply, the dispute related to the fourth category of documents, referred to as Category B in the parties' pleadings, has been resolved and Plaintiffs have agreed to withdraw their objections to the confidential designations.  *Reply* [#292] at 6.

kept confidential to the extent possible. *Reply* [#292] at 4-5. The ordinance and advisement have been interpreted by the Colorado Court of Appeals to provide individuals involved in the IAB process with an expectation of "limited confidentiality." *ACLU v. Whitman*, 159 P.3d 707, 711-13 (Colo. Ct. App. 2006). As such, Defendants "are merely asking the Court to recognize that their expectation of limited confidentiality in the IAB statements justifies designating the documents as confidential." *Reply* [#292] at 5.

Plaintiffs counter that despite any municipal ordinance to the contrary, they "fail to see how an investigation into . . . Defendants' alleged public misconduct in the performance of their public duties implicates their privacy interests. For officers who were potential witnesses to the Defendants' alleged misconduct, we fail to see how their knowledge of any misconduct implicates their privacy interests." *Response* [#254] at 9. Moreover, Plaintiffs argue that the advisement given to officers/witnesses regarding confidentiality contains sufficient "exceptions that would give [participants] little assurance that [their] statement would remain confidential" indefinitely and "hardly establishes good cause under Rule 26(c)." *Id.* Plaintiffs argue that at least one Colorado state court has rejected the alleged confidential nature of documents created after the advisement is given because the advisement is limited and conditional and disclosure has not had a chilling effect on the cooperation of officers or the public in IAB investigations. *See Nash v. Whitman*, No. 05-cv-4500, slip. op. at 8 (Denver Dist. Ct. Dec. 7, 2005) (unpublished decision). Finally, Plaintiffs point out that similar documents have been disclosed without restriction pursuant to the Colorado Open Records Act and the Colorado Criminal Justice Act. *Response* [#254] at 10.

In relation to Category C documents, Defendants argue that designating as confidential documents pertaining to unrelated, but similar IAB investigations "will not

prejudice Plaintiffs but will:   (i) protect persons who are not parties . . . from having information about them made public; and (ii) avoid public dissemination of information about disciplinary matters, DA proceedings and processes, and other incidents where that information is not relevant to the issues in this case."   *Reply* [#292] at 6.   Further, Defendants contend "[t]here is an expectation of privacy by law enforcement officers in IAB materials and the materials should be treated carefully in that light."   *Id.* at 12.

Plaintiffs counter that their argument in relation to Category A documents applies equally to the IAB complaints filed by nonparties and disciplinary actions related to those complaints.   They argue that "Defendants have failed to establish the privacy interests of anyone involved in internal affairs investigations."   *Response* [#254] at 16.

In relation to Category D documents, Defendants argue that Denver jail policies should be kept confidential "so as to avoid any breaches or attempted breaches of jail security and to keep everyone safe.   Thus, the release of the jail policy would result in a clearly defined and serious injury to the Defendants and the public."   *Reply* [#292] at 8. Further, they note that "[j]ail policies have previously been protected beyond confidential status, to the point of redaction."   *Id.*

Plaintiffs counter that while they do not take issue with certain jail policies or portions of jail policies receiving confidentiality status, "Defendants fail to explain how [the policies at issue] implicate the 'safety and security' of any jail."   *Response* [#254] at 17.   The first policy relates to visitation of inmates.   *See id.*   The second policy relates to the duties of a jail official during booking, the 2009 procedures in place to address when a prisoner contends he has been mistakenly arrested, the duties of specific jail officials, procedures for transmitting arrest documentation to the courts and instructions regarding the creation of

court lists to ensure prisoners are prepared for court appearances. *See id.* Plaintiffs contend that nothing in these topics suggests that public release would have any impact on security issues. *Id.*

Pursuant to Fed. R. Civ. P. 26(c), a protective order may be put in place "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." As noted earlier, a Protective Order has been entered in this case. It allows the parties to designate certain documents they produce as confidential when they have a good faith basis to believe that the document "implicates common law or statutory privacy interests of former City and County of Denver employees, plaintiffs, and third parties . . . ." *Protective Order* [#34] at 2.

Regardless of the terms of the Protective Order, the party seeking the confidentiality designation must provide good cause to shield the document from public view. *Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002). Ordinarily, the Court's role would be to balance the party's need for the documents against the harm that may result from unfettered disclosure. *Id.* However, because Plaintiffs already have access to the documents and will be able to use them in the prosecution of their case, the issue of Plaintiffs' need for the documents is not relevant to resolution of the dispute. Accordingly, the sole consideration is the harm that may result from making these documents public. In consideration of the potential harm, the Court addresses whether privacy interests are at play and whether the case involves an important public interest. *Id.* In doing so, I balance whether the public's right of access is outweighed by privacy interests. *Id.* As a preliminary matter, I note that the presumption favors public access, see *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004), particularly here where the party seeking protection is a

public entity.  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-88 (3d Cir. 1994).

A.      **Category A**

Category A involves documents compiled during the IAB investigations of Plaintiffs'

mistaken-identity arrests.  Defendants cite the privacy interests of officers/witnesses (parties

and nonparties) as well as the need to maintain the confidentiality of IAB disciplinary matters

and processes.  Plaintiffs argue that Defendants have failed to provide good cause for

designating the documents as confidential and that alleged privacy interests do not outweigh

the public's right of access.

As a preliminary matter, the Court recently issued an Order compelling Defendants

to produce other IAB materials under the procedures set forth in the Protective Order.  *Order*

[#243] at 6-7, 9.  While I noted that my ruling was not dispositive of the outcome of the

pending Motions, *id.* at 9 n.1, undoubtedly the most consistent approach would be to

maintain the confidentiality designation of the documents at issue here given their similarity

and, perhaps, their overlap.  Nevertheless, I consider whether good cause exists to do so.

Defendants have cited a municipal ordinance and the advisement given to

officer/witness participants in the IAB process, both of which (Defendants argue) instill some

expectation of privacy.  While the level of privacy has been characterized by Colorado states

courts as limited or conditional, see *ACLU*, 159 P.3d at 711-13, these provisions

nevertheless instill an expectation in the participant that confidentiality will be maintained

unless there is a compelling reason not to do so.  Accordingly, I find that Defendants have

demonstrated a good faith basis for asserting that privacy rights apply here to officer/witness

participants in the IAB disciplinary process.  Although I note that the public interest in the

release of these documents is presumed given the important public issues involved, see

*Pansy*, 23 F.3d at 787-88, Defendants have provided good cause for maintaining the documents as confidential.  Further, I find that consistency supports designating at least those documents which pertain to officer/witness participants in the IAB disciplinary process as confidential.  *See generally Gillard v. Boulder Valley Sch. Dist. Re-2*, 196 F.R.D. 382, 387 (D. Colo. 200) (citation omitted) (noting that pursuant to Rule 26(c),  court has broad discretion to determine what degree of protection is appropriate via the  protective order and noting that "a party has no right to make unrestricted disclosure of the information obtained through discovery").

To the extent that Defendants also designated as confidential statements made by Plaintiffs in relation to the IAB disciplinary process pertaining to their mistaken-identity arrests, it appears that Plaintiffs also take issue with this designation.  *See Response* [#254] at 11.  Considering that a party can waive his or her right to confidentiality and, indeed, the Plaintiffs have appeared to do so here as a result of bringing this voluntary lawsuit and objecting to any confidentiality designation, I see no need to designate the documents as confidential that pertain to Plaintiffs' own statements, if any.

### B.    Category C

Category C involves documents compiled by the IAB regarding nonparty complaints of mistaken-identity arrests, any investigations that ensued, and any documents utilized by other agencies in relation to these complaints.  Defendants cite the privacy interests of nonparty complainants and officer/witness participants as well as the need to maintain the confidentiality of IAB and DA disciplinary matters and processes.  As with Category A documents, Plaintiffs dispute that there is a prevailing privacy interest that outweighs any public interest either in the statements made by complainants or other participants in the IAB

and DA disciplinary process.

My ruling on this issue is substantially similar to my ruling on the Category A documents, namely that I find that good cause and consistency weigh in favor of maintaining the confidentiality of these documents. I further order that the confidentiality designation of any documents relating to the nonparty complainants shall be maintained as well. These complainants have not explicitly waived any privacy interests they may have in relation to their statements, nor have they put their statements at issue by filing a voluntary lawsuit.

**C.     Category D**

Category D involves certain jail policies. The Court finds that the issue of whether to designate these policies as confidential is analogous to a similar discovery dispute between the parties heard by the Court on September 3, 2009 [Docket No. 281]. The issue in the September 3, 2009 discovery hearing related to a different jail policy, referred to as the PDAF Manual, which had been redacted by Defendants prior to production. In relation to the PDAF Manual, Plaintiffs agreed that there were "recognized security concerns and that there is a confidentiality order in place" to protect those concerns. *Order* [#281] at 2. Here, Plaintiffs argue that given the topics at issue in the jail polices in dispute, confidentiality concerns, if any, are outweighed by the public's right of access to these policies.

I find that production of the jail policies under a confidentiality designation pursuant to the Protective Order [#34] is consistent with Plaintiffs' previous position regarding the PDAF Manual and my prior Order and is simply the most fair way to handle resolution of this issue. Moreover, it would not serve the efficiency of the Court or the parties to make piecemeal confidentiality redactions of the jail policies at issue. Further, I am not convinced

that Defendants improperly asserted a safety or security concern here (especially considering that Plaintiffs did not object to allowing similar policies to be labeled as confidential).  Ample caselaw addressing issues relating to jail or prison security and safety concerns reflects a broad policy against Court interference in matters which affect those concerns.  *See, e.g., Thornburg v. Abbott*, 490 U.S. 401, 415 (1989) (noting that it is "beyond question" that jails have a legitimate interest in protecting security pursuant to the policies they enact); *Whitington v. Sokol*, No. 06-cv-01245-EWN-CBS, 2008 WL 435277, at **1-2 (D. Colo. Feb. 14, 2008) (unpublished decision) (recognizing that deference is given to policies put in place to manage jail security and noting that, even if not privileged, jails may have legitimate interest in protecting polices from dissemination which may impact safety concerns, but that those concerns can ordinarily be protected "through redaction or other appropriate measures").  Accordingly, despite the presumption in favor of public access, I find that good cause has been shown to maintain the confidentiality designation of the jail policies at issue.  *See Ulibarri v. City & County of Denver*, 07-cv-01814-WDM-MJW, 2009 WL 260945, at **4-5 (D. Colo. Feb. 4, 2009) (unpublished decision) (noting that jail policy implicated safety and security concerns such that a confidentiality label did not go far enough to protect it and ordering that certain portions not be produced to plaintiffs and the remainder be produced only under the confidentiality designation).

IT IS FURTHER **ORDERED** that the Motions are **GRANTED** to the extent that Category A documents shall remain confidential, except as noted below, Category C documents shall remain confidential and Category D documents shall remain confidential

IT IS FURTHER **ORDERED** that the documents shall be produced and maintained pursuant to the terms of the Protective Order.  Specifically, the documents shall be marked

as "Confidential" and shall not be disclosed to unauthorized individuals or used for any purpose other than the preparation of this case. *Protective Order* [#34] at 2-4. To the extent that the documents are filed on the record, they shall be filed in accordance with D.C. Colo. L. Civ. R. 7.2 and 7.3, unless public disclosure is required by Court Order. *Id.* at 4-5. Finally, at the completion of this litigation, the documents designated as confidential shall be returned to the producing party. *Id.*

IT IS FURTHER **ORDERED** that the Motions are **DENIED** to the extent that Category A documents consisting of Plaintiffs' own statements, if any, shall not remain confidential.

Dated:  September 22, 2009

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge

11