IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01693-MSK-KLM

MUSE JAMA,
JOSE ERNESTO IBARRA, and
DENNIS MICHAEL SMITH,

    Plaintiffs,

ANTONIO CARLOS SANCHEZ,

    Plaintiff-Intervenor,

v.

CITY AND COUNTY OF DENVER,
KURT PETERSON, an officer with the Denver Police Department, in his individual capacity,
JOHN BISHOP, an officer with the Denver Police Department, in his individual capacity,
ALAN SIRHAL, a Denver Sheriff Department deputy, in his individual capacity, and
PAUL ORTEGA, a sergeant with the Denver Sheriff Department, in his individual capacity,

    Defendants.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

THIS MATTER comes before the Court on Defendant Paul Ortega's Motion for Summary Judgment **(#188)**, to which the Plaintiffs responded **(#272, #308)**, and Sergeant Ortega replied **(#297)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Issue Presented

The Amended Complaint **(#85)** contains a single claim against Sergeant Ortega asserted by Plaintiff Dennis Michael Smith ("Mr. Smith") pursuant to 42 U.S.C. § 1983 for violation of

his Fourth Amendment rights. This claim arises from Sergeant Ortega's January 19, 2008 arrest and detention of Mr. Smith based on a warrant for a "Dennis Allen Smith." In his Motion for Summary Judgment, Sergeant Ortega asserts the defense of qualified immunity.

### III. Material Facts

Considering all undisputed facts, and construing those in dispute most favorably to Mr. Smith for purposes of this motion, the Court finds the material facts to be as follows.

Based on previous confusion relating to auto insurance with a "Dennis Allen Smith", Mr. Smith obtained a letter from the Colorado Bureau of Investigation ("CBI") stating that he was not the same person as Dennis Allen Smith (the "CBI letter"). The CBI letter further stated that although both persons had the same date of birth, June 25, 1959, they had differing fingerprints, SID numbers and FBI numbers. The CBI letter also stated that the information contained in it was posted in the records of the Colorado Criminal Information Center ("CCIC").

On January 16, 2008, Mr. Smith and his friend, Mr. Kadell, made an appointment (via the Denver County Jail website) to visit an inmate at the Denver County Jail. Mr. Smith identified himself as Dennis Smith, stated his date of birth as June 25, 1959 and supplied his driver's license number. His driver's license contained a physical description - male, 6'0", 190 lbs, green eyes, brown hair. It also gave a Denver, Colorado address.

The information provided through the website is used by jail staff to pre-screen visitors for security purposes. In accordance with this purpose, CCIC personnel ran a criminal background check on Mr. Smith, which included running Mr. Smith's information through the National Crime Information Center database ("NCIC"). The NCIC screening revealed that a warrant had been issued for a "Dennis Allen Smith", described as a white male, 6'1" tall, 205 lbs, hazel eyes, brown hair, and an address in Wyoming. Due to illegibility of the warrant, Dennis

2

Allen Smith's birth date could only be deciphered as June 25, 1958 or 1959.

Based on the similarity between the names and descriptors of Dennis Allen Smith and Mr. Smith, the CCIC officer concluded that it was "possible" that Mr. Smith was the subject of the arrest warrant. She noted such possibility and sent the relevant information to the Denver County Jail. The she sent information included the warrant for Dennis Alan Smith and the driver's license information for Mr. Smith. The Visit Officer at the jail supplied this information to his supervisor, Sergeant Ortega.

When Mr. Smith and Mr. Kadell arrived at the Denver County Jail for their scheduled visit, Sergeant Ortega separated Mr. Smith from Mr. Kadell. Mr. Smith was advised that there was an outstanding warrant for his arrest—for Dennis Allen Smith. He objected, stating that he was not the Dennis Allen Smith named in the warrant, that he had been confused with Dennis Allen Smith before, that the CBI had issued a letter that confirmed their separate identities, and that a copy of this letter was in his car, parked outside the jail. He repeatedly requested the opportunity to go to his car to retrieve the letter, to have Mr. Kadell retrieve the letter, or have police officers retrieve the letter. Sergeant Ortega refused all of Mr. Smith's requests.

Sergeant Ortega gave Mr. Kadell the keys to Mr. Smith's vehicle, but did not inform him why Mr. Smith was being arrested or of Mr. Smith's request for the CBI letter in the car. Mr. Kadell asked if there was anything that he could do to help Mr. Smith; in response Sergeant Ortega only told him that Mr. Smith was being transported to the Denver City Jail on Cherokee Street. Sergeant Ortega called the Denver City Jail and told them that Mr. Smith claimed that he was not the person in the warrant and that he was being transported there for positive identification. At the Denver City Jail, a fingerprint comparison confirmed that Mr. Smith was not Dennis Allen Smith. He was released after approximately four and a half hours.

## IV. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proven for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters

judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V. Analysis

Mr. Smith asserts a claim against Sergeant Ortega under 42 U.S.C. § 1983 for violation of his Fourth Amendment right to be free from unreasonable seizure. He alleges that it was unreasonable for Sergeant Ortega to arrest him based on the warrant issued for seizure of Dennis Allen Smith because (1) there were numerous discrepancies between the description in the warrant and other information available to Sergeant Ortega and (2) Sergeant Ortega refused to allow Mr. Smith to produce the CBI letter that confirmed that he was not Dennis Allen Smith.

Sergeant Ortega asserts the defense of qualified immunity. The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is only applicable, however, if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official. *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005).

When a defendant raises a qualified immunity defense, the burden shifts to a plaintiff to satisfy a two-part test. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d

5

1294, 1300 (10th Cir. 2009). A plaintiff must show that he or she had a constitutional right that was infringed (the "violation prong"), and that such right was clearly established at the time of the alleged infringement (the "clearly established prong"). Although a plaintiff must submit evidence that would satisfy both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d at 1299.

In this case, the Court begins with the violation prong. Here, it is important to know when Mr. Smith's arrest occurred. Unfortunately, the facts with regard to this issue are not clear.

Prior to Mr. Smith's arrival at the jail, Sergeant Ortega knew that there was a "possible warrant" for Mr. Smith's arrest. Mr. Smith characterizes his seizure as a "process of arrest" during which he was separated from Mr. Kadell, advised that there was a warrant for his arrest to which he responded with information about the mistaken identity, and that an official CBI letter, stored in his car, would resolve the issue. Mr. Smith described the contents of the letter and offered to retrieve it, to have Mr. Kadell retrieve it or to have officers retrieve it. Sergeant Ortega declined these offers. Mr. Smith was then handcuffed. After Mr. Smith was handcuffed, and outside of his presence, Sergeant Ortega handed Mr. Smith's car keys to Mr. Kadell, but did not inform him of the need for the CBI letter in the car.

If one views Mr. Smith's arrest as having occurred when he was first separated from Mr. Kadell, then no claim for violation of his Fourth Amendment rights has been shown. Under the Fourth Amendment, all seizures must be reasonable. *See, e.g.*, *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (holding that the touchstone of the Fourth Amendment is reasonableness, which is measured objectively by examining the totality of the circumstances). Mistakes, in and of themselves, do not constitute unreasonableness if the mistakes themselves are reasonable. *See*

6

*Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). Thus, an arrest executed pursuant to a valid warrant supported by probable cause, is constitutional even if it is later determined that the arrestee was not the person named in the warrant. *See Hill v. California*, 401 U.S. 797, 802 (1971). Indeed, in *Hill* the Supreme Court held a the California state court was correct that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." The Supreme Court reasoned that the arrest was a "reasonable response to the situation facing them at the time" and, therefore, constitutional. To support the finding of reasonableness, the Supreme Court noted that the officers executed a search warrant at the defendant's apartment on a person who met the description of the defendant. Notably, the Supreme Court determined that the fact that the arrestee produced identification showing that he was, in fact, not the resident of the apartment did not make the arrest unreasonable because aliases and false identifications are not uncommon.

Thus, under *Hill*, Mr. Smith's arrest was constitutional if it was a reasonable response to the situation facing Sergeant Ortega at the time. At the time of the separation of Mr. Smith and Mr. Kadell, Sergeant Ortega only had information from the warrant and Mr. Smith's driver's license. Sergeant Ortega had no information about the confusion between Mr. Smith and Dennis Alan Smith, the existence and availability of the CBI letter or information in the CCIC database. Given the numerous similarities between Dennis Allen Smith and Mr. Smith including name, height, weight, hair color, and date of birth, it was a reasonable response for Sergeant Ortega to arrest Mr. Smith based on the warrant. The minor discrepancies in height, weight, and address are not sufficient to make the execution of the warrant unreasonable. Therefore, based upon the name and physical similarities, Sergeant Ortega had probable cause to believe that Mr. Smith

7

was the subject of the warrant, and accordingly no Fourth Amendment violation has been established.[1] Thus, the Court need not address the clearly established prong because Sergeant Ortega is entitled to qualified immunity under this framework based solely on the violation prong.

If, however, if the arrest occurred when Mr. Smith was handcuffed, the analysis changes. In this scenario, the separation of Mr. Smith from Mr. Kadell might be characterized as an investigatory detention,[2] the purpose of which was to confirm that Mr. Smith was the subject of the warrant. The reasonableness of an investigatory detention is premised upon reasonable suspicion which the warrant and drivers license information clearly provided. Investigatory detentions cannot last longer than that necessary to effectuate the purpose of the detention. *See United States v. Cervine*, 347 F.3d 865, 870–71 (10th Cir. 2003).

Viewed as an investigatory detention, Sergeant Ortega was supplied with information about the confusion between Mr. Smith and the subject of the warrant and that there was an available, official CBI letter that confirmed that Mr. Smith was not Dennis Alan Smith. The CBI letter was reasonably obtainable from a nearby vehicle. Without release of Mr. Smith or diversion of other police personnel, Sergeant Ortega could have requested Mr. Kadell to produce the letter. Alternatively, its contents could have been verified in the CCIC database. Although

---

[1] As noted in *Baker v. McCollan*, 443 U.S. 137 (1979), discussed *infra*, unreasonable delay in investigation of a person's identity after an arrest does not give rise to a claim for violation of the Fourth Amendment but may give rise to a claim for a denial of due process under the Fourteenth Amendment. Here, no Fourteenth Amendment claim has been asserted.

[2] Investigative detentions are Fourth Amendment seizures of limited scope and duration. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1253 (10th Cir. 2007). Such detentions are reasonable if they are justified at their inception by reasonable suspicion that the detained individual is engaged in criminal activity and the detention is reasonably related in scope to the circumstances that justify the detention. *See id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

Sergeant Ortega was convinced of Mr. Smith's sincerity, he nevertheless executed the warrant without investigation as to the CBI letter or information from the CCIC. Sergeant Ortega explains that he did not want to release Mr. Smith or use other officers to obtain the letter from the car, but he offers no explanation as to why he chose not to have Mr. Kadell obtain the letter or otherwise verify the information with the CCIC prior to executing the warrant. Under these circumstances, sufficient evidence has been shown to establish a *prima facie* Fourth Amendment violation. Arguably, Mr. Smith's arrest was not reasonable because Sergeant Ortega did not have probable cause to believe that Mr. Smith was the subject of the warrant.

Turning to the clearly established prong of the qualified immunity analysis for this framework only, the question is whether the law at the time clearly established that Sergeant Ortega's actions violated Mr. Smith's constitutional rights. *See Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004). Cast in the framework of this case, the question becomes: was the law clearly established that, when an officer is presented with a claim by a person that he is not the subject of a valid arrest warrant, he or she must consider readily available, proffered official information to confirm the person's identity before executing the warrant?

Typically, the clearly established inquiry focuses upon whether, on the operative date, there was binding case authority from the Supreme Court or Tenth Circuit (or the clear weight of authority from other circuits) recognizing that particular conduct would violate federal law. *York v. City of Las Cruces*, 523 F.3d 1205, 1211–12 (10th Cir. 2008). The inquiry is not whether there was previous case with identical facts, but instead, whether prior caselaw put the defendant on notice that the alleged conduct would be unconstitutional. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). This is essentially a legal question, evaluated using an objective standard. *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998).

Somewhat reluctantly, the Court concludes that there was no clearly established law that put Sergeant Ortega on notice that his failure to verify, or attempt to verify, Mr. Smith's identity would violate Mr. Smith's rights.[3]

Mr. Smith has presented no authority stating that an officer has an affirmative duty to investigate when a suspect claims that he has conclusive proof of mistaken identity.[4] Instead, Mr. Smith relies on dicta from *Baptiste v. J.C. Penney, Co. Inc.*, 147 F.3d 1252 (10th Cir. 1998), to suggest that such an obligation exists. Due to factual dissimilarity, the Court finds that the selected quotation from *Baptiste* is inadequate to clearly establish an obligation in these circumstances.

Ms. Baptiste brought a section 1983 claim against police officers for violating her Fourth Amendment right to be free from an unreasonable search and seizure. While Ms. Baptiste was shopping, store security guards reviewed an surveillance video. Based on the video, they suspected that she had shoplifted a ring and confronted her with such accusation. In response, she emptied her bags and provided receipts for the items in her possession, including two rings. Unconvinced as to her innocence, the security guards called police officers for assistance.

The officers both interviewed the guards and reviewed the security video. The video showed Ms. Baptiste take a ring out her bag and place it on her finger, compare the ring with other rings in the store, and place a ring in her bag. With another ring in her hand, she looked for a sales person. After a gap in the recording, the video showed Ms. Baptiste making a purchase.

---

[3] Perhaps this case will provide guidance to officers in the future.

[4] Although Mr. Smith argues that Sergeant Ortega has not adequately provided authority demonstrating that his conduct was constitutional, he misunderstands the relative burdens in the qualified immunity analysis. In response to an assertion of the defense of qualified immunity, it is the plaintiff's burden to establish law that demonstrated that the subject conduct was not constitutional.

10

Based on the video and the statements of the security guards, the officers searched Ms. Baptiste's bags and conduct a pat-down search of her person. Finding nothing, they released her.

The Tenth Circuit treated the incident as a warrantless arrest and search incident to arrest and, accordingly, considered whether there was probable cause for a warrantless arrest. The Court concluded that the officers did not have probable cause to detain and search Ms. Baptiste. In so holding, the Court rejected the contention that the security guards' statements about the video were sufficient to establish probable cause because the officers independently viewed the video. The Tenth Circuit cited to a Seventh Circuit case, *Be Vier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986), which stated that "A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." It is this statement that Mr. Smith argues clearly established Sergeant Ortega's duty to investigate Mr. Smith's claim of mistaken identity.

Although the clearly established prong does not require that a controlling case present identical or even fundamentally similar facts, it does require that the case provide guidance as to the constitutionality of *particular* conduct. *See Brosseau*, 543 U.S. at 199–200; *Hope v. Pelzer*, 536 U.S. 730, 740 (2002); *Jones*, 410 F.3d at 1230. Here, the quotation from *Be Vier* may be superficially supportive of Mr. Smith's argument, but the factual differences in *Baptiste* are such that *Baptiste* is not sufficient to clearly establish an obligation by an officer to verify identity. *Baptiste* did not concern identity issues. It did not concern execution of a warrant in the face of a claim of misidentification, but instead a warrantless arrest. It did not concern a failure of an officer to consider available information; indeed, it concerned a situation where officers erred by relying on statements made by others when they had reviewed the evidence themselves. In fact, far from advising an officer in Sergeant Ortega's shoes that he had an obligation to investigate Mr. Smith's identity, the facts of *Baptiste* could lead a reasonable officer to do exactly what he

11

did—not rely on statements by someone else (the CBI letter or information in CCIC), but instead direct that an independent fingerprint analysis be performed.

Nor does caselaw with greater factual similarity clearly establish that Sergeant Ortega's conduct would violate federal law. One case that is more factually akin to these circumstances is *Baker v. McCollan*, 443 U.S. 137 (1979). In *Baker*, the plaintiff asserted a section 1983 claim based upon his arrest pursuant to a warrant. The warrant bore his name, but it was based on conduct by Baker's brother, who had stolen his identity. Despite the plaintiff's repeated protests of innocence, he was detained for three days. When officers eventually realized the mistake based on a photograph of the person for which the warrant was issued, the plaintiff was released.

The Supreme Court affirmed dismissal of the section 1983 claim. It reasoned that the plaintiff's claim was for the failure of the officers to investigate his claim of innocence after he was arrested, not for the arrest itself. Therefore, as to the Fourth Amendment, the Court determined that the arrest was executed pursuant to a valid warrant under the Fourth Amendment. In dicta, the Court stated that it did not believe that an officer executing a warrant that is based on probable cause is constitutionally required to independently investigate every claim of innocence, whether based on mistaken identity or otherwise. The Court also noted that although no Fourth amendment claim had been pled, a post-arrest due process violation might be alleged for a failure to investigate a repeated claim of innocence over a prolonged period of time. Although *Baker* is distinguishable from this case for a number of reasons,[5] it suggests that an officer does not have an affirmative duty to investigate every claim of mistaken identity.

---

[5] *Baker* addressed an arrest based on a stolen identity rather than a mistaken identity, addressed the failure of officers to investigate a claim of innocence after an arrest rather than during execution of the warrant, and addressed a due process claim rather than a Fourth Amendment claim.

A more recent case involving identity issues, *Reyes v. Bd. of County Comm'rs of the County of Arapahoe*, 2008 U.S. Dist. LEXIS 28949 (D. Colo. Apr. 8, 2008) (unpublished), *aff'd*, *Reyes v. Bd. of County Comm'rs*, 311 Fed. App'x 113 (10th Cir. Feb. 6, 2009) (unpublished) follows this lead.[6] In *Reyes*, the plaintiff brought a section 1983 claim for violation of his Fourth Amendment rights based upon an arrest pursuant to warrant. Mr. Reyes had been arrested on a warrant identifying an individual with the same name, same general physical description including a scar on his right arm, and the same Kansas identification number. The proper subject of the warrant had used a number of aliases, alias birth dates, and social security numbers, including Mr. Reyes' birth date and social security number. However, Mr. Reyes' middle name was Jose which did not match any alias used by the subject of the warrant. Mr. Reyes was detained for approximately two weeks during which he appeared before a court, was assigned a public defender, signed an extradition form, and was extradited to Kansas.

In determining that the plaintiff had not alleged a violation of his Fourth Amendment rights in his section 1983 action for the arrest, the district court concluded it was reasonable for the officers to conclude that the plaintiff was the person named in the warrant based on the numerous matching identifiers. It noted that although further investigation, such as a fingerprint comparison, would have revealed the error, the officers were not under any affirmative duty to conduct such investigation, especially in light of the plaintiff's failure to assert his claim of mistaken identity. On appeal, the Tenth Circuit affirmed the district court noting its agreement with the analysis of the lower court. *See Reyes v. Bd. of County Comm'rs*, 311 Fed. App'x 113 (10th Cir. Feb. 6, 2009) (unpublished).

---

[6] The fact that these cases are not published might be understood to evidence a belief that no new standard for constitutionally sufficient conduct was being announced.

The Court concludes that although Mr. Smith may have stated sufficient facts to establish a violation of his Fourth Amendment rights if his arrest occurred at the time he was handcuffed, he has not demonstrated that it was clearly established that Sergeant Ortega was obligated to investigate his claims of misidentification prior to execution of the warrant. Accordingly, Sergeant Ortega is entitled to qualified immunity on Mr. Smith's claim against him, under either factual framework.

**IT IS THEREFORE ORDERED** that

(1) Defendant Paul Ortega's Motion for Summary Judgment **(#188)** is **GRANTED**.

(2) Mr. Smith's Claim against Defendant Paul Ortega is **BARRED BY QUALIFIED IMMUNITY**.

(3) This being the only claim asserted against Defendant Ortega, his name shall be removed from the caption of all further filings.

Dated this 29th day of March, 2010

                                                  **BY THE COURT:**

                                                  Marcia S. Krieger
                                                  United States District Judge