IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01693-MSK-KLM

MUSE JAMA,
JOSE ERNESTO IBARRA, and
DENNIS MICHAEL SMITH,

      Plaintiffs,

ANTONIO CARLOS SANCHEZ,

      Plaintiff-Intervenor,

v.

CITY AND COUNTY OF DENVER, and
ALAN SIRHAL, a Denver Sheriff Department deputy, in his individual capacity,

      Defendants.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

THIS MATTER comes before the Court on Defendant Alan Sirhal's Motion for Summary Judgment **(#427)**, to which the Plaintiffs responded **(#428, 430)**, and Deputy Sirhal replied **(#434)**. Also pending before the Court is the Plaintiffs' Unopposed Motion to Seal **(#429)** the Response **(#428)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

## I. Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Issue Presented

The Amended Complaint **(#85)** contains a single claim (Claim 5) against Deputy Sirhal asserted by Plaintiff Jose Ernesto Ibarra pursuant to 42 U.S.C. § 1983. Mr. Ibarra asserts that his

detention based on five warrants in the names of Jose C. Ibarra and Jose Cayetaho Ibarra was unreasonable and therefore in violation of the Fourth Amendment. In his Motion for Summary Judgment, Deputy Sirhal asserts the defense of qualified immunity.

### III. Material Facts

Considering all undisputed facts, and construing those in dispute most favorably to Mr. Ibarra for purposes of this motion, the Court finds the material facts to be as follows.

In 2005 and 2006, Mr. Ibarra received four tickets for traffic infractions. When he failed to resolve these tickets, bench warrants were issued on at least three of the tickets. Each of the three warrants listed his name as Jose E. Ibarra with a birthdate of September 20, 1988, height of 5'6", weight of 110 lbs, black hair and brown eyes. He was arrested based on these warrants on July 23, 2007 by Denver Police Department Officer Harvey, who is not a party to this case.

During his detention on these warrants, Officer Harvey searched the National Crime Information Center ("NCIC") database to determine if there were any other active warrants for Mr. Ibarra. Although the search returned over sixty results for persons either named or using aliases incorporating the name "Jose Ibarra," Mr. Ibarra apparently was held only on the three warrants for failure to appear. After resolving the four traffic charges against him, Mr. Ibarra was scheduled to be released on July 2, 2007.

Prior to a detainee's release, the Denver Police Department runs a check to determine if there are any other outstanding warrants for the individual. If there are, the individual is detained on those warrants. If not, he is released as scheduled. In Mr. Ibarra's case, the person who performed the screening was Deputy Sirhal, in his capacity as the receiving-unit deputy.

Deputy Sirhal worked from a "P-Name Document," which lists an individual's name, birthdate, physical description, identifying numbers such as social security number, Denver

Police Department number and FBI number, and the warrants, both active and resolved, for the individual. In this case, the P-Name Document for Mr. Ibarra included the following information: a white male with the name "Jose Ibarra," a date of birth of 9/20/1988, height of 5'6", weight of 140 lbs, brown eyes, brown hair, and a home address of 2701 W 25th Avenue, Denver. It also detailed the offenses and the bench warrants for which Mr. Ibarra had been lawfully detained. This document did not include Mr. Ibarra's middle name, Ernesto, or his middle initial although the warrants on which he was arrested contained such information.

Pursuant to Denver Police Department procedure, Deputy Sirhal submitted the P-Name Document to the NCIC Operator on duty, Ms. Catherine McLane. She ran the name "Jose Ibarra" through the NCIC database. This search generated approximately 60 active warrants for individuals using the name "Jose Ibarra" or some combination thereof. Five of the warrants were for a "Jose C. Ibarra" or "Jose Cayetaho Ibarra," a white male with a date of birth of 8/7/1988, a height ranging from 5'2" to 5'6", a weight ranging from 110 to 150 lbs, brown eyes, brown or black hair, and an address at either 1805 E. 37th Avenue, Denver or 3440 Birch Street, Denver. Ms. McLane faxed the five warrants to Deputy Sirhal; she did not fax the entire results list. On the fax she wrote: "I don't think there is enough to call it him — your call — lemme know. - Cat"

Based on the similarity in name, birthdate, height, weight, eye color, and hair color, Deputy Sirhal determined that there was a close enough match between Mr. Ibarra and the five warrants for Jose C. Ibarra and Jose Cayetaho Ibarra to continue to hold Mr. Ibarra. In his deposition, Deputy Sirhal acknowledged that he was not sure that Mr. Ibarra was the person named in the warrants and that he had reservations as to whether it was the same person, but that he believed there was a close enough match to let the courts make the final determination. He

stated that he also considered that Mr. Ibarra had no listed middle name or initial in the documents that he had and that neither Mr. Ibarra nor Jose C./Cayetaho Ibarra had any criminal history. Prior to making this determination, Deputy Sirhal did not talk to Mr. Ibarra, nor advise him of the active warrants. He did not do any further investigation, including reviewing the actual warrants for Mr. Ibarra, pulling up mug shots for either person, obtaining criminal history reports for either person, or contacting the counties where the warrants originated. After Deputy Sirhal made the determination to hold Mr. Ibarra on the five warrants, he did not notify anyone of the question as to identity. He also did not track Mr. Ibarra's status or the progress of the court's determination of Mr. Ibarra's identity.

Mr. Ibarra remained in custody through July 27, 2007, twenty-five days past the date of intended release. During that time, Mr. Ibarra told certain unnamed officers that his was a case of mistaken identity, but they did not assist him. There is no evidence that Mr. Ibarra told Deputy Sirhal that this was a case of mistaken identity. In fact, there is no evidence that Deputy Sirhal had any further connection to the resolution of Mr. Ibarra's case.

### IV.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proven for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

V.    **Analysis**

A.    **The Plaintiffs' Motion to Seal (#429)**

As a preliminary matter, the Court turns first to the Plaintiffs' Motion to Seal **(#429)** their response **(#428)**. The Plaintiffs move to seal their Response **(#428)** and all attached exhibits based on the presence of two categories of items: (i) juvenile court records, which are required to be confidential pursuant to Colorado statute, Colo. Rev. Stat. § 19-1-304; and (ii) law enforcement records, which Defendant City of Denver, the Colorado Bureau of Investigation, and the United States Attorney for the District of Colorado on behalf of the Federal Bureau of Investigation have stated are entitled to protection from disclosure to the public. No further information as to the necessity of sealing is set forth nor is any specification as to the pages or exhibits that contain this information.

The Supreme Court acknowledged a common-law right of access to judicial records in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978). This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Accordingly, there is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). It is within the district court's discretion to determine whether a particular court document should be sealed. *See Nixon,* 435 U.S at 599. D.C. Colo. L. Civ. R. 7.2 requires a party seeking sealing of a document to show "compelling" reasons for doing so. Such a showing is required to ensure public confidence in the judicial process. It is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter. *Cf. McVeigh*, 119 F.3d at 814.

In this case, the Plaintiffs have failed to demonstrate such compelling reasons. Although

they cite to the need to keep juvenile records confidential, no description or identification of the records that fall within this category is provided. As to the Colorado law enforcement's view that law enforcement records should be confidential, the Plaintiffs provide no further explanation as to the need served by sealing of these documents nor do they specify of identify the records that fall within this category. Accordingly, the Court is unable to make an informed decision as to whether the need for confidentiality outweighs the interests that favor non-disclosure. Moreover, the Plaintiffs provide no justification as to why redaction or other, less restrictive alternative is not sufficient. In fact, the Plaintiffs filed a redacted version of their response **(#430)**.

However, the juvenile records and law enforcement records that are attached to the Response are not material to the issues presented in this motion. Therefore, the Court has not considered them. Consequently, there is no public interest in them. For this reason, alone, the Court **GRANTS** the Motion **(#429).**

### B. Deputy Sirhal's Motion for Summary Judgment (#427)

Mr. Ibarra asserts a single claim against Deputy Sirhal under 42 U.S.C. § 1983 for violation of his Fourth Amendment right to be free from unreasonable seizure. He alleges that it was unreasonable for Deputy Sirhal to detain him based on the warrants for Jose C./Cayetaho Ibarra given the circumstances and facts he was confronted with at the time. Mr. Ibarra argues that Deputy Sirhal's decision and actions were unreasonable for four reasons: (i) there were insufficient similarities between Mr. Ibarra and the listed descriptors of Jose C./Cayetaho Ibarra on the warrants; (ii) both Deputy Sirhal himself and Ms. McLane stated that they were not completely sure that Mr. Ibarra was the person named in the warrants, but nevertheless Deputy Sirhal detained Mr. Ibarra on these warrants; (iii) Deputy Sirhal failed to engage in any further

investigation to determine Mr. Ibarra's identity; and (iv) Deputy Sirhal failed to report his concerns as to Mr. Ibarra's identity to any other person or authority after he made the decision to detain Mr. Ibarra. As a remedy, Mr. Ibarra seeks compensatory and punitive damages under 42 U.S.C. § 1983, injunctive relief, attorney fees and costs, and any other remedy the Court finds proper.

Deputy Sirhal asserts the defense of qualified immunity. The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is only applicable, however, if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official. *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005).

When a defendant raises a qualified immunity defense, the burden shifts to a plaintiff to satisfy a two-part test. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). A plaintiff must show that he or she had a constitutional right that was infringed (the "violation prong"), and that such right was clearly established at the time of the alleged infringement (the "clearly established prong"). Although a plaintiff must submit evidence that would satisfy both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d at 1299.

With respect to the violation prong, a plaintiff must precisely articulate the clearly established right that was allegedly violated and specifically identify the defendant's conduct that violated the right. *See Green*, 574 F.3d at 1300. For the clearly established prong, the

question is whether the identified right was clearly established based on the specific facts of the case. *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004). Typically, the inquiry is whether, on the operative date, there was binding authority from the Supreme Court or Tenth Circuit (or the clear weight of authority from other circuits) recognizing that particular conduct would constitute a violation of federal law. *York v. City of Las Cruces*, 523 F.3d 1205, 1211–12 (10th Cir. 2008). The inquiry is not whether there was previous case with identical facts, but instead, whether prior caselaw put the defendants on notice that the alleged conduct would be unconstitutional. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). This is essentially a legal question and is measured by an objective standard. *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998). If a plaintiff establishes both prongs under the qualified immunity analysis, for summary judgment the burden shifts back to the defendant to demonstrate that there are no material facts in dispute. *See Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991).

The Court begins its analysis with the clearly established prong. For each of Mr. Ibarra's four arguments, the parties generally agree that the law regarding mistaken identity arrests is clearly established as set out in *Hill v. California*, 401 U.S. 797, 802 (1971).[1] In *Hill*, police

---

[1] Mr. Ibarra cites to two additional cases, *Brinegar v. United States*, 338 U.S. 160 (1949); and *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007). These cases, however, are factually distinguishable because they do not address mistaken identity arrests nor the determination of identity with connection with the execution of an arrest warrant. *See Brinegar*, 338 U.S. at 175–76 (concluding that it was not improper or inconsistent for the trial court to admit testimony in a probable cause hearing but exclude it at trial because the law required two different standards in the two different situations); *Cortez*, 478 F.3d at 1116–17 (holding that an arrest based solely on a double-hearsay complaint of illegal activity and no subsequent investigation was without probable cause). These cases address only generalized Fourth Amendment principles such as probable cause standards and, therefore, are not sufficient to clearly establish that Deputy Sirhal's *particular* conduct in this case was unconstitutional. *See Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004); *Jones v. Hunt*, 410 F.3d 1221, 1230 (10th Cir. 2005). In other words, because these cases do not establish the standards to which an officer must comport when determining whether a particular person is the one named in a warrant, they

officers obtained an arrest warrant for Mr. Hill, which included his age, physical description, and address. When they arrived at Mr. Hill's apartment, Mr. Miller, who fit Mr. Hill's physical description, was present in the apartment but Mr. Hill was not. Despite Mr. Miller's protests that he was not Mr. Hill and production of an identification card indicating he was Mr. Miller, the police officers believed Mr. Miller to be Mr. Hill and arrested him on the warrant for Mr. Hill. They also conducted a search of the apartment incident to the arrest, which resulted in seizure of a number of items that were subsequently used to convict Mr. Hill of robbery.

Mr. Hill appealed his conviction arguing that the evidence was not admissible because Mr. Hill, the subject of the arrest warrant, had not actually been arrested prior to the search. The Supreme Court framed the issue as whether Mr. Miller's arrest was constitutional, because if it was constitutional then the subsequent search was constitutional and the evidence was admissible. The Supreme Court concluded that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." In *Hill*, the Court reasoned that the officers' arrest of Mr. Miller was a "reasonable response to the situation facing them at the time." To support the finding of reasonableness, the Supreme Court noted that the officers executed the search warrant at Mr. Hill's apartment on a person who met the description of Mr. Hill. The fact that Mr. Miller produced identification showing that he was, in fact, Mr. Miller, did not make the arrest unreasonable because aliases and false identifications are not uncommon. Given *Hill's* analysis, it is clearly established that mistaken identity arrests are governed by a "reasonableness" standard—whether the officer's mistake as to the identity was reasonable under the

---

are irrelevant to the clearly established analysis.

circumstances facing him or her at the time of the arrest. *See id.*; *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990) (holding that mistakes, in and of themselves, do not constitute unreasonableness if the mistakes themselves are reasonable).

Mr. Ibarra argues that based on the standard articulated in *Hill*, it was clearly established at the time of his detention that it was unreasonable for Deputy Sirhal to hold him on the five warrants for Jose C./Cayetaho Ibarra. His reliance on *Hill*, however, is misplaced. *Hill* addresses mistaken identity arrests and provides a general guiding principle in determining the constitutionality of such arrests, *i.e.*, that arrests premised on mistaken identity are not *per se* unconstitutional as long as the mistake is reasonable given the situation facing and known to the arresting officer at that time. It does not, however, provide any guidance or standards with respect to the degree of similarity that is required to make an arrest reasonable,[2] whether concerns regarding the identity of the person must be heeded or further investigated, the level of investigation that must be undertaken to determine a person's identity,[3] or whether an officer

---

[2] Mr. Ibarra argues that the physical descriptions of the two men were not, in fact, very similar. Mr. Ibarra was described on the P-Name Document as a white male with the name "Jose Ibarra," a date of birth of 9/20/1988, height of 5'6", weight of 140 lbs, brown eyes, and brown hair. The five warrants described a white male with the name "Jose C. Ibarra" or "Jose Cayetaho Ibarra" with a date of birth of 8/7/1988, height of 5'2" to 5'6", weight of 110 to 140 lbs, brown eyes, and brown or black hair. Mr. Ibarra is correct that some of these descriptors are not exact matches. Even if Deputy Sirhal were confronted with descriptors at their most disparate (difference in middle name/initial, 6 weeks between birthdates, 4" in height, 30 lbs in weight, and black versus brown hair), Mr. Ibarra has not presented any legal authority that would put an officer on notice that detention under such circumstances would be unreasonable and a violation of the Fourth Amendment.

[3] The Court addressed whether there was clearly established law with respect to the degree of investigation required in the context of a Motion for Summary Judgment by other defendants as to the particular claims against them. *See* Order Granting Motion for Summary Judgment **(#426)**. The Court determined that the Supreme Court's decision in *Baker v. McCollan*, 443 U.S. 137 (1979), and the Tenth Circuit's affirmance of the district court in *Reyes v. Bd. of County Comm'rs*, 311 Fed. App'x 113 (10th Cir. Feb. 6, 2009) (unpublished), *aff'g*

11

with concerns as to the detainee's identity must notify any other authority or person as to such doubts. Rather, *Hill* provides that reasonable mistakes do <u>not</u> constitute constitutional violations, and demonstrates that an arrest based on similarities in descriptors is reasonable even in the face of some contrary evidence that the individual is the person described in the warrant.[4] As such, it cannot serve to put an officer on notice that the detention of an individual based on a warrant for a person with the same first and last names, birthdates that fall within two months of each other, and similar physical characteristics (albeit with some differences) is unconstitutional, even when the officer himself is admittedly not completely sure that the person arrested is that whom is named in the warrant.[5] Thus, as Mr. Ibarra has not met his burden on the clearly established prong, Deputy Sirhal is entitled to qualified immunity on this claim.

**IT IS THEREFORE ORDERED** that

(1)   The Plaintiffs' Unopposed Motion to Seal **(#429)** is **GRANTED**.

---

*Reyes v. Bd. of County Comm'rs of the County of Arapahoe*, 2008 U.S. Dist. LEXIS 28949 (D. Colo. Apr. 8, 2008) (unpublished), provided some guidance for an officer confronting a claim of mistaken identity. The Court noted that both of these cases suggested that an officer does not have an affirmative duty to investigate every claim of mistaken identity. Even this finding, however, is not relevant to Mr. Ibarra's claim as there is no allegation that Mr. Ibarra, or anyone acting on his behalf, ever made a claim of mistaken identity to Deputy Sirhal. Mr. Ibarra alleges that he made such claims to other, unidentified officers, but does not allege that any of these claims were passed on to Deputy Sirhal.

[4]  In *Hill*, the contrary evidence was an identification card indicating that Mr. Miller was, in fact, Mr. Miller and not Mr. Hill. Here, Mr. Ibarra premises his argument solely on the discrepancies in middle name, birthdate, and physical descriptors between the P-Name Sheet and the five warrants. These are arguable less profound than the differences in *Hill*, especially considering that the physical descriptors of Jose C./Cayetaho Ibarra varied across the five different warrants and, with respect to the physical descriptors, were often an exact match to Mr. Ibarra.

[5]  As noted *supra*, generalized Fourth Amendment standards requiring that arrests be reasonable and based on probable cause are not sufficient to clearly establish that Deputy Sirhal's *particular* conduct in this case was unconstitutional. *See Brosseau*, 543 U.S. at 199–200; *Jones*, 410 F.3d at 1230.

(2)     Defendant Alan Sirhal's Motion for Summary Judgment **(#427)** is **GRANTED**.

Mr. Ibarra's claim against Deputy Sirhal (Claim 5) is **BARRED BY QUALIFIED IMMUNITY**.

Dated this 4th day of August, 2011

                              **BY THE COURT:**

*Marcia S. Krieger*

                              Marcia S. Krieger
                              United States District Judge